UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PITZ,<br><br>Petitioner,<br><br>v.<br><br>INESSA GONZALEZ,<br><br>Respondent. | Case No. 25-cv-04454-LJC<br><br>**ORDER REGARDING MOTIONS IN LIMINE**<br><br>Re: Dkt. No. 97 |

The parties to this Hague Convention proceeding filed four motions in limine: one "conditional" motion in limine by Petitioner Christopher Pitz, and three motions in limine by Respondent Inessa Gonzalez. *See generally* ECF No. 97. Petitioner has now confirmed that his sole motion is moot. ECF No. 118. The Court denied Respondent's first motion in limine for the reasons stated on the record at the August 20, 2025 pretrial conference, and deferred a ruling on her third motion in limine, to be addressed if necessary at trial. *See* ECF No. 119. The Court now addresses Respondent's second motion in limine, to exclude testimony and documents related to German court proceedings, or if such matters are not excluded, to find a waiver of privilege as to Petitioner's German lawyer Dr. Andreas Hanke. ECF No. 97 at 12–16. For the reasons discussed below, that motion is GRANTED in part and DENIED in part.[1]

The record includes an "Interim order for parental custody" issued on May 8, 2025. ECF No. 92-9 at 11. That order lists Respondent and her authorized representative, and notes that it was issued without oral proceedings. Later correspondence, produced on August 5, 2025, by the same judge, states, "The children have their habitual residence in Berlin," and goes on to explain custody proceedings that remain to be completed in Berlin. ECF No. 92-9 at 4. Respondent

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

contends that the German proceedings are fundamentally unfair and unreliable, because all rest on an assumption that the parties' children are habitual residents of Germany, which resulted from Respondent's default in responding to documents that she asserts were never properly served on her. *Id.* at 12.

Both parties agree that habitual residence—the primary issue in dispute in this case—is a matter for this Court to decide. Petitioner has not asked the Court to defer to the German courts' findings on that matter, and the Court will not do so. Absent any such deference, the German decisions shed little light on the factual question of where the children habitually resided. Both parties will have the opportunity at trial to offer the sort of evidence and argument on that issue that Respondent asserts she was unable to present to the German courts. The Court therefore declines to consider the German decisions for that purpose, and will exclude as irrelevant (or in the alternative, as cumulative and a waste of time under Rule 403 of the Federal Rules of Evidence) any testimony from Dr. Hanke about the German proceedings leading up to the court's habitual residence determination, how the German court reached that decision, or Dr. Hanke's own opinions as to whether the children are habitual residents of Germany (which, to the extent offered, would seem to be based on standards of German law rather than the Hague convention as interpreted by U.S. precedent binding on this Court).

The Court also excludes from trial Dr. Hanke's opinion that Petitioner "has rights of custody to both children under German law," ECF No. 64, ¶ 17; *see also, e.g.*, *id.* ¶ 21. The Court has separately granted summary adjudication of Petitioner's right to custody under German law, so that issue is no longer relevant at trial.

German law and the German proceedings may, however, be relevant to the question of whether any protective or ameliorative measures are appropriate *if* the Court determines that Germany was the children's habitual residence and orders their return. Both parties agreed at the pretrial conference that the Court has discretion to order such measures. *See Golan v. Saada*, 596 U.S. 666, 678–79 (2022). Understanding what proceedings will occur upon any such return to Germany, and what protections would be available under German law, may inform the assessment of what if any protective measures should be imposed by this Court. The Court will therefore

2

1 allow for that purpose the admission of documentary evidence of the German proceedings thus far,
2 as well as testimony from Dr. Hanke about German law and the custody proceedings that would
3 go forward if the Court were to order the children's return. Respondent may introduce Dr.
4 Hanke's declarations if relevant for impeachment purposes.

5     Finally, Respondent seeks to further depose Dr. Hanke about the German proceedings and
6 his declarations, arguing that Petitioner and Dr. Hanke waived attorney-client privilege and work
7 product protections by offering declarations from Dr. Hanke as an expert on German law. ECF
8 No. 97 at 14–16.

9     Judge Chen addressed a similar issue in a Hague Convention case last year, where the
10 respondent was represented by the same counsel as Respondent here:

> Respondent argues that Petitioner should be compelled to produce documents from his expert on Armenian law, Dr. Dashyan. For purposes of the trial, there are two important topics covered by Dr. Dashyan in her expert report: (1) what protection mechanisms are available in domestic violence cases in Armenia (ameliorative measures) and (2) what happened in the Armenian court proceedings related to the domestic violence incident that led to Respondent fleeing Armenia. According to Respondent, once Petitioner designated Dr. Dashyan his expert on these matters, he waived attorney-client privilege over the same subject matters – which is important because Dr. Dashyan *represented* Petitioner during the domestic violence proceedings in Armenia and *continues* to represent him in those proceedings. In other words, Respondent is taking the position that any advice that Dr. Dashyan gave to Petitioner as part of the domestic violence proceedings in Armenia should be produced. Respondent also takes the position that, if Dr. Dashyan gave Petitioner any advice related to ameliorative measures, that should also be produced and be subject to disclosure.
>
> The Court does not find waiver with respect to the topic in (2). The Dashyan expert report does talk about what happened in the Armenian court proceedings (¶¶ 54-57). However, that is simply a factual recounting. In this regard, Dr. Dashyan is more like a fact witness rather than a legal expert. There is no opinion evidence on this point. Topic (1), however, presents a different issue. Petitioner admits that Dr. Dashyan will not simply identify what legal protections there are for domestic violence victims in Armenia but will also opine on the efficacy of those protections. Here, she is not a mere fact witness, but is offering an opinion. Because Dr. Dashyan is giving testimony as an expert, Petitioner has an obligation to disclose her opinions as well as what she relied upon or *considered* to arrive at those opinions. See Fed. R. Civ. P. 26(a)(2)(B) & 1993 advisory committee notes. Moreover, if Dr. Dashyan has made statements to Petitioner that are contrary to or conflict with the opinions in her report (e.g., about the efficacy of the legal protections), then Petitioner cannot use the

3

>attorney-client privilege as a shield to prevent disclosure of those statements given that he designated Dr. Dashyan as a testifying expert (i.e., a sword) on the same subject matter. Waiver may be based on subject matter covered by the opinion and may encompass communications which contradict the expert's stated opinion. *See Herrick Co. v. Vetta Sports*, No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS 14544, at *7 (S.D.N.Y. Sept. 14, 1998) ("By designating Wolfram as an expert trial witness [on legal ethics], Skadden has opened the door to such discovery, which covers documents other than those directly considered by Wolfram in forming his opinions. Prior inconsistent opinions by Wolfram on the same subject matter would be highly relevant material."); *id.* at *9 ("Skadden cannot present Wolfram as an expert on legal ethics and then prevent Wolfram's expert testimony from being effectively impeached by claims of privilege. To do so would be to use Wolfram's status as an expert on matters of legal ethics as both sword and a shield . . . .").
>
>Notably, at the hearing, Petitioner essentially conceded that he could not claim privilege over communications he had with Dr. Dashyan about ameliorative measures. That being the case, the Court ordered the parties to meet and confer so that any communications about that subject matter will be produced to Respondent. In that regard, the scope of Respondent's document request must be narrowed accordingly.

*Cavaco Dias v. Cavaco Dias*, No. 24-cv-04471-EMC, ECF No. 153 at 6–7 (N.D. Cal. Oct. 18, 2024).

Petitioner asserted at the pretrial conference that foreign parties in Hague Convention cases routinely offer declarations from their own foreign attorneys as to the nature of foreign law. Perhaps so, but for the reasons addressed by Judge Chen, that approach at least risks a finding of waiver of privilege. Subject to exceptions not applicable here, the common law of the federal courts generally covers privilege in federal court proceedings. Fed. R. Evid. 501. Petitioner offers no authority for applying foreign privilege law under similar circumstances. It appears likely that the Court *could* properly find a waiver of privilege as to prior statements Dr. Hanke made to Petitioner on the issues of law he has addressed in his declaration.

Respondent has not, however, rebutted Dr. Hanke's statements that disclosing communications with Petitioner and other details about his representation of Petitioner would violate Dr. Hanke's ethical obligations under German ethical rules, notwithstanding Petitioner's litigation conduct and use of Dr. Hanke's opinions in this Court. *See, e.g.*, ECF No. 97-5 at 16, 19, 20 (Hanke Dep. at 54:22–57:20, 66:5–69:5, 71:22–72:13). Though German law does not govern privilege issues in this Court, ordering a foreign attorney to disclose information in

4

violation of the laws or professional rules of his country would impose a significant burden on the attorney. Setting aside any opinion that Dr. Hanke might have on the issue of habitual residence and custody rights, which the Court will not allow at trial, Dr. Hanke's declarations and anticipated testimony at trial are limited (in relevant part) to explanations of German court proceedings and German laws. His declarations and anticipated testimony on those matters do not appear to be meaningfully in dispute. Any possibility that Dr. Hanke might have made prior inconsistent statements on those topics to Petitioner is wholly speculative. Under the circumstances of this case, "the burden . . . of the proposed discovery" into Dr. Hanke's attorney-client communications and interactions, in violation of his obligations in Germany, "outweighs its likely benefit," even assuming for the sake of argument that U.S. law of privilege waiver applies here and would support a finding of waiver. *See* Fed. R. Civ. P. 26(b)(1). Respondent's request for a further deposition of Dr. Hanke is therefore DENIED.

Rule 26 does not govern testimony at trial. But a "trial court's power to control the conduct of trial is broad." *United States v. Panza*, 612 F.2d 432, 438 (9th Cir. 1979). "In performing that function, a trial judge must necessarily have the *discretion* to order a witness to answer a question . . . ." *Magyar v. United Fire Ins. Co.*, 811 F.2d 1330, 1331 (9th Cir. 1987) (emphasis added). Such discretion is supported by the Federal Rules of Evidence, which recognize the Court's authority to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3); *see also* Fed. R. Evid. 403. So long as Respondent's questions do not reach the point of harassment, the Court will not prevent Respondent from asking Dr. Hanke about prior statements to Petitioner on the subject matter addressed in his declaration or trial testimony. As a matter of discretion, however, the Court will not order Dr. Hanke to answer such questions if he asserts that his obligations under German law or ethical rules prevent him from doing so—at least so long as his testimony elicited by Petitioner is limited to the issues of German law and potential future German proceedings that, as discussed above, may be relevant to this Court's consideration of protective or ameliorative measures.

The Court's holdings above limit, to some degree, Respondent's ability to test Dr. Hanke's opinions on German law. Nothing prevented Respondent from retaining her own expert on that

5

issue or offering other forms of evidence of German law if she disputes Dr. Hanke's opinions. *See* Fed. R. Civ. P. 44.1. In an abundance of caution, however, the Court will allow Respondent to present her own witness or other evidence on issues of German law or future German custody proceedings, notwithstanding her failure to designate such a witness or evidence earlier. If Respondent intends to exercise this option, she most notify Petitioner and the Court that she intends to do so no later than noon on Friday, August 22, 2025, and must disclose any such witness and expert declaration[2] to Petitioner and the Court no later than noon on Sunday, August 24, 2025. If Respondent discloses a new witness, Petitioner may depose that witness for no more than two hours before the witness testifies at trial, and the parties shall meet and confer to determine an appropriate date and time for the deposition (which could potentially occur on a trial day after other regularly scheduled trial testimony has concluded).

**IT IS SO ORDERED.**

Dated: August 21, 2025

                                              _____
                                              LISA J. CISNEROS
                                              United States Magistrate Judge

---

[2] Because these disclosures will be made on the eve of trial, if Respondent advances her own expert, the expert's declaration shall not exceed fourteen pages (the total number of pages contained in Dr. Hanke's two declarations), not including attached exhibits.

6